**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

PHYLLIS MATTHEWS,

                 Plaintiff,

                                              Case No. 6:17-cv-1546-J-JRK

vs.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                 Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Phyllis Matthews ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of severe spinal damage, a removed spinal disc, pain in the left arm, and back problems. See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed December 13, 2017, at 65, 74, 83, 93, 232. Plaintiff filed an application for DIB on October 11, 2013, Tr. at 193, alleging an onset disability date of September 16, 2013,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed December 13, 2017; Reference Order (Doc. No. 17), entered December 18, 2017.

Tr. at 65.[2] Plaintiff applied for SSI on March 8, 2014, alleging an onset disability date of September 16, 2013. Tr. at 195.[3] The applications were denied initially, Tr. at 61, 65-73, 103, 104-06 (DIB); Tr. at 62, 74-82, 107-09, 110 (SSI), and upon reconsideration, Tr. at 63, 93-102, 115, 116-20 (DIB); Tr. at 64, 83-92, 121-25, 126 (SSI).

On June 7, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 37-60. Plaintiff was forty-five years old at the time of the hearing. Tr. at 40. The ALJ issued a Decision on July 13, 2016, finding Plaintiff not disabled through the date of the Decision. Tr. at 20-30.

On June 23, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 24, 2017, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) "[t]he [ALJ] failed to apply the correct legal standards to the opinion of [treating physician,] Dr. [Joseph] Comfort"; and 2) "[t]he ALJ failed to properly evaluate [Plaintiff's] allegations of pain and limitations." Plaintiff's Brief (Doc. No. 19; "Pl.'s Br."), filed February 12, 2018, at 2; see Pl.'s Br. at 12-14 (first argument), 14-16 (second argument). On May 14, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective

---

[2] Although actually completed on October 11, 2013, see Tr. at 193, the protective filing date of the application is listed elsewhere in the administrative transcript as October 9, 2013, see, e.g., Tr. at 65, 93-94.

[3] Although actually completed on March 8, 2014, see Tr. at 195, the protective filing date of the application is listed elsewhere in the administrative transcript as October 9, 2013, see, e.g., Tr. at 74, 83-84.

memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 22-30. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 16, 2013, the alleged onset date." Tr. at 22 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine, rheumatoid arthritis, and myalgia[ ]." Tr. at 22 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except with no overhead reaching, climbing, or exposure to hazards; no more than occasional stooping, crouching, and crawling; must have ability to change positions every 30 minutes to perform job from either seated or standing position; and, requires the use of cane for ambulation to/from duty station.

Tr. at 23 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 28 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("43 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 28 (citation omitted), including "cashier II," "ticket taker," and "marker," Tr. at 29.[5] The ALJ concluded that Plaintiff "has not been under a disability . . . from September 16, 2013, through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a

---

[5] The ALJ also noted that if Plaintiff had "an additional limitation of only occasional handling due to the recent diagnosis of rheumatoid arthritis," she would be capable of performing the following jobs: "furniture rental clerk"; "call out operator"; and "surveillance systems monitor." Tr. at 29.

-4-

preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff contends the ALJ erred in assessing Dr. Comfort's opinion and in evaluating Plaintiff's subjective symptoms. The undersigned addresses Plaintiff's arguments in turn.

**A. Dr. Comfort's Opinion**

Plaintiff asserts that "[t]he ALJ failed to state what weight, if any, she accorded to Dr. Comfort's opinions and made a series of findings that are not supported by substantial evidence." Pl.'s Br. at 13. According to Plaintiff, "[t]he ALJ's finding that a 'majority of exams are noted with check marks' is not supported by substantial evidence." Id. (quoting Tr. at 26). Plaintiff also asserts that her "gait and mobility were normal at some examinations, but the ALJ cherry picked those findings from the medical records." Id. at 14. Plaintiff contends that to the extent the ALJ found that most of Dr. Comfort's treatment notes were illegible, "[t]his

Court has held that the illegibility of important evidentiary material can warrant a remand for clarification and supplementation as illegible records provide the reviewing court with no way to determine whether the ALJ fully understood the medical evidence before her." Id. at 13-14 (citing Yamin v. Comm'r of Soc. Sec., No. 6:07-cv-1574-Orl-GJK, 2009 WL 799457, at *2 (M.D. Fla. Mar. 24, 2009)).

Responding, Defendant argues that "[a]lthough the ALJ did not expressly assign weight to Dr. Comfort's treatment notes, the ALJ ultimately assessed Plaintiff with an RFC that fully encompassed Dr. Comfort's findings, by restricting Plaintiff to light work with additional reaching, postural, and environmental limitations and a need for a cane to ambulate to and from her duty station." Def.'s Mem. at 5 (citation omitted). Defendant further contends that "[t]he other medical evidence of record show similar findings and assessments that support the ALJ's RFC finding." Id. at 6.

The Regulations[6] establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area

---

[6] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claims, unless otherwise noted.

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

---

[8] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, Dr. Comfort is a pain management doctor, who treated Plaintiff from November 2014 through May 2016. See Tr. at 398-400, 471-83, 490-522 (treatment notes from Dr. Comfort). The ALJ observed that Dr. Comfort's treatment notes are "hand written and very hard to read; almost illegible" and that the "majority of exams are noted with check marks." Tr. at 26. "However," stated the ALJ, "records from June of 2015 [through] May of 2016 show [Plaintiff's] gait and mobility were checked as normal." Tr. at 26.

Although the ALJ did not state the weight assigned to the opinions contained in Dr. Comfort's treatment notes, the undersigned finds that the ALJ accepted the impressions and diagnoses contained in them. The ALJ correctly noted that Dr. Comfort's most recent treatment notes show that Plaintiff's gait and mobility are normal. Tr. at 26 (Decision); see Tr. at 490, 493, 496, 499, 502, 505, 511, 514, 519, 520 (duplicate) (treatment notes from June 2015 to May 2016 indicating Plaintiff's gait and mobility were normal). Moreover, although some of Dr. Comfort's treatment notes show that Plaintiff's strength was reduced and that her reflexes and sensation were abnormal, see Tr. at 471, 474, 519, 520 (duplicate), more recent treatment notes from September 2015 to May 2016 show that Plaintiff had full strength, her reflexes were normal, and her sensation was sometimes normal, see Tr. at 490, 493, 496, 502, 505, 508, 511, 514. As a whole, Dr. Comfort's treatment notes are consistent

with the ALJ's RFC determination that Plaintiff can perform light duty with additional limitations. See Tr. at 23 (Decision).

The majority of Dr. Comfort's treatment notes are in the form of either questionnaires or check-off forms that Dr. Comfort completed, but they also contain some handwritten notes that are mostly illegible. The illegibility of the handwritten notes does not warrant remand in this case because, unlike the progress notes in Yamin, Dr. Comfort's illegible notes are not "critical to determining whether substantial evidence exist[s] to support the Commissioner's decision to deny [Plaintiff's] claims." Yamin, 2009 WL 799457, at *14. First, the opinions in Dr. Comfort's treatment notes are mostly in the form of checkmarks that are clear, and the ALJ considered them. See Tr. at 26. Second, the ALJ also considered the progress notes from three other treating physicians, Dr. Stephane Lavoie,[9] Dr. Roland Brutus,[10] and Dr. Stanley F. Stockhammer, Jr.[11] See Tr. at 24-27. As the ALJ observed, the treatment notes from these physicians show largely normal findings consistent with the RFC. See, e.g., Tr. at 347-48 (December 2013 treatment note from Dr. Lavoie showing Plaintiff had a "[n]ormal motor and sensory exam," her "[deep tendon reflexes were] intact throughout upper extremities," and she had "no pain with [range of motion] in all planes of movement of neck," and assessing Plaintiff with "[n]o ongoing restrictions"); Tr. at 380 (March 2014 treatment note from Dr. Lavoie indicating that Plaintiff had "[m]ild pain to palpation along cervical spine," she had a "[n]ormal sensory and motor exam," her "[deep tendon reflexes were] intact throughout

---

[9] Dr. Lavoie is an orthopaedic doctor, who treated Plaintiff from September 2013 to April 2014. See Tr. at 347-65, 378-81.

[10] Dr. Brutus is a pain management doctor, who treated Plaintiff from February 2014 to June 2014. See 383-87, 404-14, 423-27.

[11] Dr. Stockhammer is a doctor of osteopathic medicine, who treated Plaintiff from May 2014 to May 2016. See Tr. at 456-63, 538-43.

upper extremities," and she had "mild pain with [range of motion] in all planes of movement of neck"); Tr. at 384, 386, 405-06, 408, 412 (duplicate), 414 (duplicate), 427 (duplicate) (treatment notes from Dr. Brutus spanning March 2014 to June 2014 showing normal musculoskeletal findings and indicating Plaintiff "does well on her current treatment and is able to live her life and do her daily household chores"); Tr. at 543 (July 2015 treatment note from Dr. Stockhammer indicating Plaintiff has back pain due to sciatica, but otherwise showing normal findings).

In sum, the undersigned finds that the ALJ's failure to specify the weight assigned to Dr. Comfort's opinions contained in the notes is harmless because it is clear he accepted them and relied on them in formulating the RFC. Further, the illegibility of Dr. Comfort's handwriting does not warrant remand in this case because the illegible notes are not critical to determining whether substantial evidence supports the Decision.

**B. Plaintiff's Subjective Complaints**

In arguing that the ALJ erred in evaluating Plaintiff's subjective complaints, Plaintiff specifically takes issue with the ALJ's statement that Plaintiff's "description of limited activity appears more consistent with long-term opioid use as opposed to medical need as there is no suggestion in the objective medical evidence that there is a need to lie down all day." Pl.'s Br. at 15 (quoting Tr. at 24). Plaintiff contends this statement is incorrect because Plaintiff actually "testified that her most comfortable position [is] when she [is] stretched out." Id. (citing Tr. at 45). According to Plaintiff, "[t]he ALJ improperly substituted [her] opinion for that of a medical expert" in making the allegedly erroneous statement. Id.[12]

---

[12] To the extent Plaintiff argues the ALJ's alleged error in assessing Dr. Comfort's opinions compounds the ALJ's evaluation of Plaintiff's testimony, id. at 16, this argument fails because the undersigned finds that the ALJ properly considered Dr. Comfort's opinions, see supra pp. 9-11.

-11-

Responding, Defendant asserts the ALJ "did not actually find opioid use was the true cause of Plaintiff's allegations of disabling limitations." Def.'s Mem. at 15 (citation omitted). According to Defendant, the ALJ "simply suggested opioid use as a possible alternate explanation for Plaintiff's allegations of disabling limitations, in light of the fact that the record evidence as a whole did not support such allegations." Id. (citation omitted).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The SSA recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[13] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Here, the ALJ followed SSR 16-3P and discounted to an extent Plaintiff's subjective complaints. Specifically, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; and that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are somewhat consistent with the medical evidence and other evidence in the record." Tr. at 24. The ALJ then stated as follows:

> As will be discussed in detail [in the Decision], deviations include notations in the record that [Plaintiff] was doing well after cervical fusion. Furthermore, her description of limited activity appears more consistent with long-term opioid use

---

[13] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Opinion and Order appears in this prior version. See id. at *1.

-13-

>       as opposed to medical need as there is no suggestion in the objective medical
>       evidence that there is a need to lie down all day.

Tr. at 24.

The ALJ's reference to Plaintiff's need to lie down all day is confusing as it does not appear that Plaintiff testified or otherwise stated that she needs to lie down all day. See Tr. at 45-46. The ALJ could have drawn that inference from Plaintiff's testimony that the most comfortable position for her is when she is "pretty much stretched out," Tr. at 45, but the testimony is not as strong as the ALJ portrayed. However, to the extent the ALJ's reference to Plaintiff's alleged need to lie down all day is erroneous, any error in this regard is harmless because, as explained below, the ALJ adequately evaluated Plaintiff's subjective complaints.

Substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were only somewhat consistent with the evidence of record. In making this finding, the ALJ discussed in detail the medical evidence showing largely normal findings. See Tr. at 24-27; see supra pp. 9-11 (discussion of medical evidence). The ALJ observed that "examinations and diagnostic testing do not document any objective medical findings that would prevent [Plaintiff] from performing work activity within the established residual functional capacity." Tr. at 27; see Tr. at 27-28.

The ALJ correctly noted that "although [Plaintiff] has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in [Plaintiff's] favor, the record also reveals that the treatment, including surgery and pain management, has been generally successful in controlling those symptoms." Tr. at 27; see Tr. at 384, 386, 405-06, 408, 412 (duplicate), 414 (duplicate), 427 (duplicate) (treatment notes spanning March 2014 to June 2014 indicating Plaintiff "does well on her current treatment and is able to live her life and do her daily household chores").

-14-

The ALJ observed that "given [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on [Plaintiff] by the treating doctor," but that "a review of the record in this case reveals no restrictions recommended by a treating doctor except for a 15-pound weight limit following surgery, which . . . [was] only temporary." Tr. at 28; see Tr. at 354 (October 2013 treatment note from Dr. Lavoie stating Plaintiff could not lift over fifteen pounds); Tr. at 348 (December 2013 treatment note from Dr. Lavoie stating that Plaintiff has "[n]o ongoing restrictions").

The ALJ further noted that Plaintiff "portrayed no evidence of pain or discomfort while testifying at the hearing." Tr. at 28. The ALJ stated, however, that because "[t]he hearing was short-lived and cannot be considered a conclusive indicator of [Plaintiff's] overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight." Tr. at 28.

Accordingly, to the extent the ALJ's statement regarding Plaintiff's need to lie down all day was erroneous, this error is harmless because the ALJ articulated explicit and adequate reasons to find Plaintiff's subjective complaints only "somewhat consistent" with the other evidence of record. Tr. at 24.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 4, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record